1   Teresa S. Renaker – CA State Bar No. 187800
    LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
2   476 - 9th Street
    Oakland, CA  94607
3   Telephone: (510) 839-6824
    Facsimile: (510) 839-7839
4   trenaker@lewisfeinberg.com

5   James P. Keenley – CA State Bar No. 253106
    BOLT KEENLEY KIM LLP
6   1010 Grayson Street, Suite Three
    Berkeley, California 94710
7   Phone: (510) 225-0696
    Fax: (510) 225-1095
8   jkeenley@bkkllp.com

9
    Attorneys for Plaintiff
10

11                  IN THE UNITED STATES DISTRICT COURT
12
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
13
                  SAN FRANCISCO/OAKLAND DIVISION
14

15  HAROLD BARLING, on behalf of himself      )
    and all others similarly situated,         )
16                                             )   Case No.    14-4530
                            Plaintiff,         )
17                                             )
              vs.                              )
18                                             )   **COMPLAINT (ERISA)**
    UEBT RETIREE HEALTH PLAN, UFCW &           )
19  EMPLOYERS BENEFIT TRUST FUND, and          )   **CLASS ACTION**
    BOARD OF TRUSTEES OF THE UFCW &            )
20  EMPLOYERS BENEFIT TRUST,                   )
                                               )
21                          Defendants.        )
                                               )
22

23

24                          **JURISDICTION**

25          1.      Plaintiff Harold Barling brings this action for declaratory, injunctive, and

26  monetary relief pursuant to § 502(a)(1)(B) and (c) of the Employee Retirement Income Security

27  Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), (c). This Court has subject matter

28  jurisdiction over Plaintiff's claims pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and

1  (f), and 28 U.S.C. § 1331.

2  <u>**VENUE**</u>

3  2.      Venue lies in the Northern District of California pursuant to ERISA § 502(e)(2),

4  29 U.S.C. § 1132(e)(2), because the defendant employee benefit plan is administered in part in

5  this District and the breaches alleged occurred in this District. Venue is also proper pursuant to

6  28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to

7  Plaintiff's claims occurred within this District.

8  <u>**INTRADISTRICT ASSIGNMENT**</u>

9  3.      Pursuant to Civil Local Rule 3-2(c) and (d), this action should be assigned to the

10  San Francisco/Oakland division because the subject plan is administered in part in Contra Costa

11  County and a substantial part of the events or omissions which give rise to the claims occurred

12  in Contra Costa County.

13  <u>**PARTIES**</u>

14  4.      At all relevant times, Plaintiffs were participants, as defined by ERISA § 3(7), 29

15  U.S.C. § 1002(7), in Defendant UEBT Retiree Health Plan and its predecessors, including

16  Defendant UFCW & Employers Benefit Trust (collectively "the Plan").

17  5.      Mr. Barling resides in Las Vegas, Nevada. Mr. Barling has been a member of

18  UFCW Local 5 and its predecessors for 51 years.

19  6.      At all relevant times, the Plan was an employee welfare benefit plan within the

20  meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), that was established and maintained for the

21  benefit of Northern California UFCW members and retirees. The Plan is administered in Walnut

22  Creek, California.

23  7.      At all relevant times, Defendant Board of Trustees of the UFCW & Employers

24  Benefit Trust ("the Board") was the administrator of the Plan within the meaning of ERISA §

25  3(16)(A)(i), 29 U.S.C. § 1002(16)(A)(i), in that the Plan designated the Board as its

26  administrator.

27  //

28  //

## FACTS

### Coordination of Benefits Under the Plan

8.      According to the governing instruments of the Plan, the Plan provides retirees with a "comprehensive program of healthcare benefits that will . . . [p]rovide a high level of financial protection against the high cost of medical care, including catastrophic events."

9.      The Plan provides these healthcare benefits as a secondary payor for certain plan participants, including Medicare-eligible retirees and their dependents.

10.     The Plan provides that when it is secondary it will pay 100% of "Covered Expenses" less  payments actually made by the plan that paid first.

11.     The Plan defines "Covered Expense" to mean the expense that a participant incurs for "Covered Services."

12.     The Plan defines "Covered Services" to mean "Medically Necessary Services or supplies" that are listed in the Plan's Summary of Benefits.

13.     Mr. Barling retired on July 1, 1995, and enrolled in Medicare effective January 1, 2002.

14.     From the time Mr. Barling became covered by Medicare until approximately December 2010, the Plan paid 100% of Covered Expenses that Mr. Barling incurred, less the amount paid by Medicare.

15.     In approximately January 2011, the Plan began reducing its payments for Mr. Barling's Covered Expenses by a deductible.

16.     When Mr. Barling began receiving explanation of benefit forms that reflected the deductible, he called the Plan office and was told that the Plan had began charging Medicare-eligible retirees participating in the Plan's PPO Medical Plans for deductibles and coinsurance payments pursuant to a new interpretation of the Plan made by the Plan staff.

17.     After coordination with Medicare and application of the deductible and coinsurance, the Plan no longer provided Mr. Barling with any meaningful financial protection, much less "a high level of financial protection."

//

**Mr. Barling's Appeal**

18.     Pursuant to the Plan's claim procedure, Mr. Barling submitted an appeal to the Board challenging the imposition of the deductible. The Plan received Mr. Barling's appeal on May 19, 2011.

19.     Pursuant to the Plan terms and 29 C.F.R. § 2560.503-1(h)(2)(iii)(B), a decision on Mr. Barling's appeal was due to be made at the next regularly scheduled meeting of the Board following receipt of his request for review.

20.     The Plan acknowledged receipt of Mr. Barling's appeal by letter dated May 20, 2011, and informed him that it would be reviewed at the June 2011 meeting of the Board.

21.     By letter dated July 1, 2011, the Plan informed Mr. Barling that his appeal had been reviewed by the Board at their meeting on June 30, 2011, and the Board had held the appeal over for additional review. The Plan informed Mr. Barling that his appeal would be reviewed again at the July 2011 Board meeting.

22.     By letter dated July 29, 2011, the Plan informed Mr. Barling that his appeal had been reviewed again by the Board at their meeting on July 28, 2011, and that the Board had again held his appeal over for additional review "at the full The Board of Trustee meeting in September."

23.     By letter dated November 9, 2011, the Trust Fund Administrator, Rick A. Silva, acknowledged receipt of a letter from Mr. Barling on October 25, 2011, requesting a copy of the minutes from the September 2011 Board meeting. Mr. Silva stated, "The Trust Fund has a policy to not distribute minutes from Board of Trustees meetings except under specific circumstances as required by law. Unfortunately, your request is not one of those circumstances."

24.     By letter dated November 16, 2011, nearly six months after it had received Mr. Barling's appeal, the Plan informed Mr. Barling that his appeal had been reviewed by the Board Appeals Committee on July 28, 2011, and again on August 25, 2011, and that the Appeals Committee "has denied this appeal for request for payment for allowed expense applied to the annual deductible coordination of benefits."

25.     The Plan further informed Mr. Barling, "However, this appeal has been referred to be reviewed for a policy determination by the Joint Board of Trustees. If there is any change in the decision regarding this appeal, you will be notified of the change in writing."

26.     Mr. Barling received no further correspondence from the Plan regarding his appeal.

27.     Mr. Barling has exhausted his administrative remedies under the Plan.

**Revisions to the Plan**

28.     Following Mr. Barling's appeal, in early 2013 a summary of material modifications to the Plan's summary plan description announced a change in the method of coordinating benefits for Medicare-eligible retirees effective March 1, 2013.

29.     The summary acknowledged that until the change, the Plan required a "full coordination method of providing secondary benefits" and that "[u]nder full coordination, in most cases the Plan paid the difference between the covered amount and the amount paid by the other plan. This meant that a very small amount, if anything was required to be paid by the patient."

**Mr. Barling's Document Requests**

30.     Pursuant to the Plan terms and 29 C.F.R. § 2560.503-1(h) (2)(iii) and (m)(8), Mr. Barling was entitled to receive copies of all documents, records, and other information relevant to his claim for benefits.

31.     By letter received by the Plan on August 1, 2013, Mr. Barling requested "copies of the documents in the appeal file . . . concerning my appeal."

32.     By letter faxed to the Plan on October 2, 2013, Mr. Barling's counsel requested copies of all documents required to be provided pursuant to 29 C.F.R. § 2560.503-1(h)(2)(iii) and (m)(8), and, pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), copies of the most recent version of the Plan, with any subsequent amendments thereto; the latest updated summary plan description for the Plan and any subsequent summary of material modifications; and any bargaining agreement, trust agreement, contract, or other instrument under which the Plan is established or operated.

33.     After the Plan received his counsel's letter, Mr. Barling received a letter from the Plan dated September 20, 2013, stating that it enclosed "the information that the Board of Trustees used in reviewing your appeal." The enclosure consisted of 11 pages of documents including Mr. Barling's document request, his appeal letter, the Plan's letters to Mr. Barling, and pages 51 and 52 of the Plan's summary plan description.

34.     By letter faxed to the Plan on November 25, 2013, Mr. Barling's counsel informed the Plan that the documents enclosed with its September 30 letter to Mr. Barling were not fully responsive to the October 2 request or Mr. Barling's earlier request, and reiterated the request for all documents required to be provided pursuant to ERISA and the regulations.

35.     By letter postmarked November 26, 2013, but dated November 15, 2013, the Plan provided counsel with the same 11 pages of "information that the Board of Trustees used in reviewing the appeal for Mr. Barling."

36.     By letter faxed to the Plan on December 3, 2013, Mr. Barling's counsel again informed the Plan that its response to the document requests was inadequate, and requested that additional documents be provided by December 10, 2013.

37.     By letter dated December 11, 2013, the Plan provided Mr. Barling's counsel with the summary plan description and "Retiree Plan Changes effective March 1, 2013." The Plan further stated, "In a separate envelope will be the Trust Agreement and relevant Collective Bargained Agreement." A separate letter dated the next day enclosed the Trust Agreement only.

38.     By letter dated January 2, 2014, Mr. Barling's counsel again requested collective bargaining agreements as well as certain exhibits, resolutions, and contracts referenced in the Trust Agreement and attachments. The Plan did not respond to this letter.

39.     In February 2014, Mr. Barling contacted the United States Department of Labor regarding the Plan's failure to provide requested documents.

40.     By letter dated April 10, 2014, the United States Department of Labor wrote to the Plan, requesting that it provide the requested documents to Mr. Barling and the Department.

41.     By letter dated April 17, 2014, counsel for the Plan provided Mr. Barling's counsel with a collective-bargaining agreement covering the period 2008 to 2011. Counsel for

1   the Plan stated its position that other requested documents were not subject to disclosure under

2   ERISA.

3                                    **CLASS ALLEGATIONS**

4          42.     Plaintiff brings the First Claim for Relief contained herein on behalf of himself

5   and as a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure on

6   behalf of all members of a Class comprised of all retired Medicare-eligible participants in the

7   Plan whose Plan benefits were reduced by deductibles and/or co-insurance payments prior to

8   March 1, 2013.

9          43.     The requirements for maintaining this action as a class action under Fed. R. Civ.

10  P. 23(a), (b)(1) and (b)(2) are satisfied in that:

11         (a)     The members of the Class are so numerous that joinder of all members is

12                 impracticable. Although the exact number of Class Members is unknown to Plaintiff at

13                 this time and can only be ascertained through appropriate discovery, Plaintiff is

14                 informed and believes that the Plan had 16,268 retired participants as of January 1,

15                 2012.

16         (b)     There are questions of law and fact common to the Class, including but not

17                 limited to whether the Plan terms required that where the Plan paid secondary to

18                 Medicare, the Plan pay 100% of covered expenses after payment by Medicare, without

19                 application of any deductible or coinsurance payment.

20         (c)     Plaintiff is a member of the Class and his claims are typical of the claims of the

21                 members of the Class, as Plaintiff and all members of the Class sustained injury arising

22                 out of the improper reduction of their benefits under the Plan.

23         (d)     Plaintiff will fairly and adequately protect the interests of the members of the

24                 Class. Plaintiff has no interests antagonistic to or in conflict with those of the other Class

25                 members. Plaintiff is represented by attorneys who specialize in ERISA and class action

26                 litigation.

27         (e)     Prosecution of separate actions by members of the Class would create a risk of

28                 inconsistent adjudications with respect to individual members of the Class which would

establish incompatible standards of conduct for Defendants. Alternatively, adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

(f)    Defendants have acted and/or failed to act on grounds generally applicable to the Class, thereby making appropriate monetary relief, final injunctive relief, and other equitable relief with respect to the Class as a whole.

## FIRST CLAIM FOR RELIEF

**[Claim for Benefits Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) by Mr. Barling and Class Members Against All Defendants]**

44.    Mr. Barling incorporates Paragraphs 1 through 43 as though fully set forth herein.

45.    ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

46.    Prior to March 1, 2013, Mr. Barling and the Class members were entitled to payment of 100% of covered medical expenses by the Plan after payment by Medicare, without application of deductibles or co-insurance payments. By reducing Plaintiff's and Class members' benefits under the Plan, and by related acts and omissions, Defendants have violated, and continue to violate, the terms of the Plan and the rights of Mr. Barling and Class members thereunder.

## SECOND CLAIM FOR RELIEF

**[Claim for Penalties for Document Disclosure Violations Pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c), by Mr. Barling Against Defendant Board]**

47.    Mr. Barling incorporates Paragraphs 1 through 43 as though fully set forth herein.

48.    ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), provides that a plan administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated

1 summary plan description, and the latest annual report, any terminal report, the bargaining

2 agreement, trust agreement, contract, or other instruments under which the plan is established or

3 operated.

4        49.     ERISA § 502(c), 29 U.S.C. § 1132(c), provides that any administrator who fails

5 or refuses to comply with a request for any information which such administrator is required by

6 ERISA to furnish to a participant or beneficiary by mailing the material requested to the last

7 known address of the requesting participant or beneficiary within 30 days after such request

8 may in the court's discretion be personally liable to such participant or beneficiary in the

9 amount of up to $100 a day from the date of such failure or refusal, and the court may in its

10 discretion order such other relief as it deems proper.

11        50.     29 C.F.R. § 2575.502c-1 increases the penalty under ERISA § 502(c) to $110

12 per day.

13        51.     The Board has failed or refused to comply fully with Mr. Barling's request

14 pursuant to ERISA § 104(b)(4) from October 2, 2013, to the present.

15 **PRAYER FOR RELIEF**

16       **WHEREFORE,** Plaintiff prays that the Court grant the following relief:

17 **As to the First Claim for Relief**

18       A.    Declare that Defendants have violated the terms of the Plan by failing to pay

19                Plaintiff and Class members' benefits in accordance with the terms of the Plan;

20       B.    Order Defendants to pay additional benefits to Plaintiff and Class members

21                pursuant to the terms of the Plan, together with prejudgment interest on each and

22                every suchpayment through the date judgment is entered herein;

23       C.    Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein

24                pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

25       D.    Provide such other relief as the Court deems equitable and just.

26 **As to the Second Claim for Relief:**

27       A.    Order that Defendant Board pay to Mr. Barling a penalty of $110 per day for

28                each day from October 2, 2013, to the day that they Board provides to him all

documents required to be provided under ERISA § 104(b)(4);

B.   Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

C.   Provide such other relief as the Court deems equitable and just.

Respectfully submitted,

Dated: October 6, 2014

LEWIS, FEINBERG, LEE, RENAKER & JACKSON P.C.

BOLT KEENLEY KIM LLP

By:   */s/ Teresa Renaker*
Teresa S. Renaker
Attorneys for Plaintiff

Complaint
Case No. 14-4530